CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 25 2011

JULIA C. DUDLEY, CLERK
BY:
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| BRANDON R'EAL LOCKETT, SR., | ) |
| Plaintiff, | ) Civil Action No. 7-11-cv-00125 |
| v. | ) **MEMORANDUM OPINION** |
| SHERIFF OCTAVIA JOHNSON, | ) By: Hon. Glen E. Conrad |
| Defendant. | ) Chief United States District Judge |

Plaintiff Brandon R'eal Lockett, Sr. ("Lockett" or "Plaintiff"), an inmate at the Roanoke City Jail ("Jail") proceeding pro se, initiated on March 16, 2011 this civil rights action pursuant to 42 U.S.C. § 1983, with jurisdiction vested pursuant to 28 U.S.C. § 1343. Lockett named as the defendant Sheriff Octavia Johnson ("Sheriff" or "Defendant"). On April 5, 2011, the court granted Plaintiff's motion to amend his complaint. In his amended complaint, Lockett alleges that the Sheriff treated him unfairly by denying him communication privileges with his wife, who is also an inmate at the Jail, although other incarcerated couples are granted communication privileges. Plaintiff further alleges that the Sheriff provided him inadequate portions of food, thereby causing Plaintiff to lose one hundred pounds.

Defendant moved on June 6, 2011, under Federal Rule of Civil Procedure 12(b)(6), to dismiss Lockett's complaint, contending that Plaintiff failed to exhaust his administrative remedies as required under 42 U.S.C. § 1997e(a). Plaintiff responded to the motion, averring that he did exhaust his administrative remedies. As discussed below, this motion to dismiss will

be treated as a motion for summary judgment. After considering the amended complaint and the exhibits presented by both parties, the court will grant Defendant's motion.[1]

## Background

Lockett's claims arise from the following alleged events at the Jail. Plaintiff has been incarcerated at the Jail since January 20, 2010. (Docket No. 15, Ex. A at ¶ 6.) On March 22, 2010, Lockett delivered a grievance form to Jail employees, asserting that the Jail was serving inadequate portions of food to Plaintiff and several other inmates. (Id., Ex. 3.) Lieutenant J.H. Ferguson responded on the same day, maintaining that the Jail served food and beverages that complied with the applicable nutritional guidelines. (Id.)

On June 7, 2010, about two and a half months later, Plaintiff submitted a handwritten letter directed to the Sheriff, raising once again his complaints concerning the food served by the Jail. (Id., Ex. 4.) Plaintiff also expressed concern over his shackled condition while in the presence of other inmates. (Id.) Lieutenant William A. Brooks responded to Plaintiff's letter on June 8, 2010, informing Plaintiff that the food served by the Jail satisfied the applicable health requirements and that Plaintiff was being held in administrative segregation for his own protection due to the nature of his charges. (Id.)

Plaintiff did not communicate to the Jail any further written grievances until he penned another letter, addressed again to the Sheriff, on February 1, 2011. This letter, received by the Jail on February 4, 2011, conveyed Plaintiff's sentiment that the Jail was discriminating against

---

[1] The court recognizes that Plaintiff has filed a discovery-related motion seeking the release of his medical records. (Docket No. 17.) Usually, the court would not grant a motion for summary judgment until the parties had completed discovery. However, although Plaintiff asserts that the requested documents are necessary to the preparation of his case, the case is ripe for disposition without the requested documents. Plaintiff filed a response to the Sheriff's motion for summary judgment without the medical records and he fails to demonstrate by affidavit how these records are necessary for, or relevant to, that response. See Fed. R. Civ. P. 56(d) (providing that, if a party demonstrates by affidavit that it "cannot present facts essential to justify its opposition" to a motion for summary judgment, the court may defer considering the motion, deny the motion, permit additional time for discovery, or issue any other appropriate order). For this reason, the court will deny Plaintiff's motion for release of records.

2

him because he was denied any type of communication with his wife, while other couples incarcerated at the Jail on similar criminal charges were granted communication privileges. (Docket No. 4 at 4; Docket No. 15, Ex. 5.) In his February 9, 2011 response letter, Major David K. Bell, Chief Deputy of the Jail, notified Lockett that his correspondence privileges with his wife would remain restricted until further notice. (Docket No. 4 at 4; Docket No. 15, Ex. 5.)

During this same time period, Plaintiff also wrote a letter to the Virginia Department of Corrections concerning his complaints regarding the inadequacy of the food servings at the Jail. (Docket No. 4 at 2.) On February 8, 2011, the Department of Corrections responded to Plaintiff through a letter advising him to convey his complaints to the Jail. (Id. at 3.)

Plaintiff's final written communication with Jail officials occurred on February 10, 2011. In this letter, again addressed to the Sheriff, Lockett renewed his complaint concerning his lack of communication privileges with his wife. (Docket No. 15, Ex. 6.) Captain David A. Moore responded to Plaintiff on February 16, 2011, writing that an inmate's correspondence privileges are determined on a case-by-case basis and that the restrictions on Plaintiff's communication with his wife would persist indefinitely, noting, though, that "[w]e can re-examine this issue when conditions change." (Id.)

Based on the facts alleged in his abovementioned correspondences, Lockett claims that he is entitled to relief under § 1983 for violation of his Eighth and Fourteenth Amendment rights. Based on these two constitutional claims, Lockett seeks relief in the form of visitation rights with his wife and in the form of compensation for the inadequate diet. (Docket No. 1 at 2.)

3

## Discussion

**A.     Legal Standard**

A Rule 12(b)(6) motion to dismiss must be treated as a motion for summary judgment "where materials outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d). In this case, Defendant relies on exhibits to establish her position that Plaintiff failed to exhaust his administrative remedies. (Docket No. 15-1.) Apart from attaching exhibits to his complaint (Docket No. 4), Plaintiff also references the Defendant's exhibits in his response to the motion to dismiss. (Docket No. 19.) The court therefore will consider the documents submitted by both parties and, accordingly, will treat Defendant's motion as one for summary judgment.

In considering a motion for summary judgment under Federal Rule of Civil Procedure 56, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (citations omitted). The court may grant summary judgment only when, viewing the record as a whole and in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985). For a party's evidence to raise a genuine issue of material fact that avoids summary judgment, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

**B.     Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a

4

prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is mandatory, Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 677 (4th Cir. 2005), and applies to "all inmate suits about prison life." Porter v. Nussle, 534 U.S. 516, 532 (2002). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ." Woodford v. Ngo, 548 U.S. 81, 90 (2006). An inmate's failure to exhaust constitutes an affirmative defense and, accordingly, the burden to prove failure to exhaust rests on the defendant. Jones v. Bock, 549 U.S. 199, 216 (2007).

Defendant attaches to her motion a copy of the portion of the Roanoke Sheriff's Office Operating Instructions ("Operating Instructions") that controls the procedures concerning inmate grievances. (Docket No. 15, Ex. 1.) The Operating Instructions describe the procedural requirements for handling inmate complaints on matters that are "grievable." (Id.) Defendant treats as grievable the matters articulated in Plaintiff's complaint, and Plaintiff does not dispute this categorization. (Docket No. 15, Ex. A at ¶ 4.)

The Operating Instructions distinguish between informal grievance procedures and formal grievance procedures. The Operating Instructions encourage inmates to utilize the informal grievance procedures to effect prompt resolution of their complaints. (Docket No. 15, Ex. 1.) However, inmates exhaust their administrative remedies only through employing the formal grievance procedures. (Id.) Under the formal procedures, inmates must submit written grievances on regular paper, place the paper in a sealed envelope addressed to the appropriate official indicated in the Operating Instructions, and deliver the envelope to any deputy. (Id.) The grievance must include all pertinent information that the inmate remembers. (Id.)

5

To initiate the formal grievance process, an inmate must file a written grievance with the Assistant Chief Correctional Officer within five days after the grievable incident; however, a continuing policy or condition of the Jail justifies an inmate in filing a formal grievance at any time. (Id.) The Assistant Chief Correctional Officer is afforded five working days from the day that he received the grievance to respond in writing to the inmate's grievance. (Id.)

If the inmate is unsatisfied with the Assistant Chief Correctional Officer's resolution, the inmate may appeal to the Chief Correctional Officer within five calendar days from the date that he received the resolution. (Id.) The Chief Correctional Officer must respond in writing to the inmate's appeal within five working days from the day that he received the appeal. (Id.)

If the inmate remains unsatisfied with this decision, the inmate may appeal to the Sheriff within five calendar days from the date that he received the resolution from the Chief Correctional Officer. (Id.) The Sheriff must respond in writing to the inmate's appeal within five working days from the day that he received the appeal. (Id.) The Operating Procedures provide that the Sheriff's decision is final in all grievances. (Id.)

Defendant submits an affidavit from Major David Bell, Chief Deputy of the Jail, in which Bell states that the aforementioned grievance procedures are provided to each inmate, upon admittance to the Jail, as part of the Roanoke City Jail Inmate Handbook. (Id., Ex. A.) Defendant also submits as an exhibit a copy of the Roanoke City Jail Inmate Handbook. (Id., Ex. 2.) Plaintiff does not contest either his knowledge of the grievance procedures or his receipt of the Roanoke City Jail Inmate Handbook. Defendant also submits as exhibits four letters from Plaintiff, and the accompanying written responses from Jail personnel, the contents of which are set forth above. (Id., Exs. 3-6.)

6

Case 7:11-cv-00125-GEC   Document 22   Filed 08/25/11   Page 6 of 9   Pageid#: 79

Based on the Sheriff's exhibits, Plaintiff clearly failed to comply with the administrative remedies procedure summarized above. Plaintiff's first letter constituted an informal grievance and thus did not comprise a necessary step toward exhausting his administrative remedies. (Id., Ex. 3.) Lockett penned his letter on an Inmate Request Slip which, according to the Operating Procedures, is treated as an informal grievance. (Id., Ex. 1.) In any event, even if Plaintiff's first letter constituted a formal grievance, Plaintiff failed to appeal the written resolution within five days, as required by the Operating Procedures. The resolution, written by Lieutenant J.H. Ferguson, was dated March 22, 2010 (Id., Ex. 3), and Plaintiff's next written communication, addressed to the Sheriff, did not occur until June 7, 2010, approximately two and a half months later. (Id., Ex. 4.) This June 7, 2010 letter likely constituted a formal grievance, as it was drafted on regular paper and not on an Inmate Request Slip. However, Lockett again failed to exhaust his administrative remedies by neglecting to appeal within five days after receiving Lieutenant William A. Brooks' June 8, 2010 written response. (Id.)

Plaintiff's next written communication, again addressed to the Sheriff, occurred nearly ten months later, in a letter dated February 1, 2011. (Id., Ex. 5.) Because this letter did not constitute a timely appeal from a response to a previous formal grievance, Plaintiff's February 1, 2011 letter is properly treated as an initial formal grievance. As such, this letter should have been directed to the Assistant Chief Correctional Officer, and not to the Sheriff, as required by the Operating Instructions. However, Major David K. Bell's February 9, 2011 written response to Plaintiff's letter manifests that the letter was referred to the Assistant Chief Correctional Officer. (Id.)

The Operating Procedures then required Plaintiff to appeal this resolution to the Chief Correctional Officer within five days. Plaintiff's next written communication occurred the next

7

day, on February 10, 2011, in the form of another letter addressed to the Sheriff. (Id., Ex. 6.) It is unclear whether this letter constituted an appeal of the February 9, 2011 resolution or whether the letter constituted a separate formal grievance. In any event, this issue ultimately proves irrelevant, as Plaintiff failed entirely to appeal or to respond in writing to the Jail's February 16, 2011 written response to his letter. To satisfy his administrative remedies, Plaintiff was required to appeal to the Sheriff within five days of receiving the Chief Correctional Officer's written response. Plaintiff has presented no evidence of any further written communications from him to the Jail or to any Jail official after his February 10, 2011 letter.

Thus, Plaintiff failed to comply with the formal grievance procedures outlined by the Jail's Operating Procedures. In his response to Defendant's motion to dismiss, Plaintiff insists that he exhausted his administrative remedies. To buttress this assertion, Plaintiff points to the fact that, in two of his four letters, he "stated . . . that my administrative remedies were exhausted." (Docket No. 19 at ¶¶ 1, 3.) Plaintiff also references the fact that, in three of his four letters, he stated that the Jail failed to respond to some of his grievances and that his "last appeal was filed and was [not] respon[ded] too [sic]." (Id. at ¶¶ 2, 4.) Plaintiff's arguments fail to create a genuine issue of material fact on the issue of exhaustion. First, Plaintiff's mere rote assertions that he exhausted his administrative remedies remain unaccompanied by supporting facts. Plaintiff misunderstands § 1997e(a)'s exhaustion requirement, supposing that proffering naked assertions of exhaustion satisfies the requirement when, instead, the statute obliges an inmate litigant actually to complete each step of the prison's mandated procedures. Second, vague assertions of the Jail's unresponsiveness to his alleged grievances and appeals likewise fail to satisfy the administrative exhaustion requirement. Again, Plaintiff's assertions remain unsupported by any exhibits or other facts. Plaintiff therefore failed to exhaust his administrative

8

remedies as required by 42 U.S.C. § 1997e(a) and, accordingly, has failed to demonstrate the existence of a genuine issue of material fact.

## Conclusion

For the reasons detailed above, the court grants Defendant's motion for summary judgment (Docket No. 15) on the ground that Plaintiff failed to exhaust available administrative remedies, and dismisses Plaintiff's complaint without prejudice, pursuant to § 1997e(a). Furthermore, the court denies Plaintiff's motion for release of records. (Docket No. 17.) An appropriate order shall issue.

The Clerk is directed to send certified copies of this Memorandum Opinion and the accompanying Order to the parties.

ENTER: This 24th day of August, 2011.

*/s/ Glen Conrad*

Chief United States District Judge